# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 18-1005V
Filed: September 30, 2019
UNPUBLISHED

| | |
|---|---|
| DAVID RAMOS,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Special Processing Unit (SPU);<br>Finding of Fact; Onset; Influenza<br>(Flu) Vaccine; Shoulder Injury<br>Related to Vaccine Administration<br>(SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for petitioner.
*Linda Sara Renzi*, U.S. Department of Justice, Washington, DC, for respondent.

## **FINDING OF FACT**[1]

**Dorsey**, Chief Special Master:

      On July 12, 2018, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on September 24, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] The undersigned intends to post this ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

For the reasons discussed below, the undersigned finds that the onset of petitioner's left shoulder pain occurred within 48 hours of vaccination.

I.	**Relevant Procedural History**

Following the initial status conference held on August 23, 2018, respondent was ordered to file a status report indicating how he intends to proceed in this case. ECF No. 8. On April 4, 2019, respondent filed a status report confirming that he intends to defend this case and requesting a deadline for the filing of his Rule 4(c) Report. ECF No. 19.

Respondent filed his Rule 4(c) Report ("Res. Report") on May 20, 2019. ECF No. 20. In his report, respondent asserted that petitioner has not established all of the elements necessary for a Table injury for SIRVA, including onset of shoulder pain within 48 hours of the vaccination. Res. Report at 8-9. Respondent noted that petitioner's medical records first reflect complaints of left shoulder pain on January 23, 2017—approximately four months following the September 24, 2016 vaccination. *Id*. Furthermore, respondent observed that the records in this case document four intervening medical appointments between September 24, 2016 and January 23, 2017 that do not specifically reference pain or left shoulder complaints. *Id*. at 8.

On June 10, 2019, a scheduling order was issued noting that the undersigned had reviewed respondent's Rule 4(c) Report and the evidence filed to date in this case. ECF No. 21. The undersigned stated that briefing and a hearing were not necessary to make a finding of fact regarding the onset of petitioner's alleged injury. *Id*. The undersigned set a deadline for the parties to file any additional relevant evidence they wished to have considered regarding this issue. *Id*.

On August 5, 2019, petitioner filed a supplemental affidavit and affidavits from Gloria Ramos (his mother) and Beckie Wilbur (his sister). Petitioner's Exhibits ("Pet. Exs.") 13-15.

On August 20, 2019, respondent filed a status report ("Res. Status Report") asserting that petitioner has "failed to prove a compensable SIRVA claim" and requesting that the undersigned dismiss the petition. Res. Status Report at 3. Respondent reiterated that, at four medical appointments following his vaccination, petitioner either did not report any pain or specifically complain of left shoulder symptoms. *Id*. at 1-3. Respondent contended that petitioner's affidavits do not "overcome the presumption of accuracy of symptoms set forth in the contemporaneous medical records." *Id*. at 3.

II.	**Issue**

At issue is whether petitioner's first symptom or manifestation of onset after vaccine administration was within 48 hours as set forth in the Vaccine Injury Table. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination). Additionally, the Qualifications

2

and aids to interpretation ("QAI") for a Table SIRVA requires that a petitioner's pain occur within this same time frame, 48 hours.  42 C.F.R. § 100.3(c)(10).

### III.     Authority

Pursuant to Vaccine Act § 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act § 11(c)(1).  A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period."  Vaccine Act § 13(b)(2).  "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table."  *Id.*

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Vaccine Act § 13(b)(1).  "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions.  With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Curcuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

### IV.     Finding of Fact

For the reasons discussed below, the undersigned finds that the onset of petitioner's left shoulder pain occurred within 48 hours of vaccination.  The undersigned makes this finding after a complete review of the record to include all medical records, affidavits, respondent's Rule 4(c) Report, and the additional evidence filed.  Specifically, the undersigned bases the finding on the following evidence:

- On September 24, 2016, petitioner was administered a flu vaccine intramuscularly in his left deltoid.  Pet. Ex. 1 at 2.

- On January 23, 2017, petitioner presented to his primary care physician with a chief complaint of left arm pain. Pet. Ex. 2 at 55.  Petitioner stated that "[s]ince September when he got a flu shot in his left deltoid," he had been unable to raise his left shoulder above 90 degrees due to pain.  *Id.* at 56.  He reported that his pain had been getting progressively worse and denied any trauma or inciting event other than the flu shot.  *Id.*  On examination, petitioner was unable to abduct his shoulder above 90 degrees.  *Id.* at 57.

- On January 24, 2017, petitioner completed a Vaccine Adverse Event Reporting System report in connection with the September 24, 2016 flu vaccination. Pet. Ex. 11 at 1. Petitioner noted that he had experienced post-vaccination limitation of his left arm range of motion in addition to "perpetual sharp-stabbing pain in left arm." *Id.* The "Adverse event onset" section of the report reflects an entry of September 24, 2016. *Id.*

- On January 31, 2017, petitioner presented to the emergency room with complaints of left shoulder pain. Pet. Ex. 2 at 170. The "duration" of pain was entered as September 24, 2016. *Id.* Petitioner rated his current pain as "10" out of "10" with movement. *Id.* Petitioner was diagnosed with left rotator cuff injury in September 2016 with worsening pain over four months. *Id.*

- On February 2, 2017, petitioner underwent an occupational therapy evaluation for treatment of left rotator cuff injury and shoulder pain. *Id.* at 166-67. The date of injury was noted as September 24, 2016. *Id.* at 167. On examination, petitioner was observed to have 87 degrees of active flexion, 38 degrees of extension, 50 degrees of abduction, 0 degrees adduction, 30 degrees of internal rotation, normal external rotation, and reduced grip strength. *Id.*

- On September 18, 2017, petitioner underwent a physical therapy evaluation for treatment of left shoulder pain. Pet. Ex. 5 at 5. Petitioner stated that he had received a flu vaccination in September 2016 and had experienced pain since that time. *Id.*

- On July 12, 2018, petitioner filed an affidavit stating that he received a flu vaccination in his left shoulder on September 24, 2016 and had begun to experience pain and stiffness in his left shoulder "[t]hat same day." Pet. Ex. 7 at ¶¶ 2-3. In a supplemental affidavit filed on August 5, 2019, petitioner averred that he experienced pain and reduced range of motion on the evening of the September 24, 2016 flu vaccination. Pet. Ex. 13 at ¶ 3. Petitioner stated that he "firmly believed that it was normal to be experiencing pain at the injection site for a few weeks." *Id.* at ¶ 5. For this reason, petitioner explained that he "did not immediately raise the issue to [his] doctors." *Id.* at ¶¶ 5-6.

- On August 5, 2019, petitioner filed an affidavit from Gloria Ramos, his mother. Pet. Ex. 14. Ms. Ramos recalled that she was present with petitioner at the pharmacy when he received the September 24, 2016 flu vaccination. *Id.* at ¶ 3. On the drive home from the pharmacy, Ms. Ramos averred that petitioner told her that his September 24, 2016 flu vaccination had been more painful than his previous flu vaccination. *Id.* at ¶ 4. Ms. Ramos stated that petitioner reported shoulder pain on the evening of the vaccination and over the subsequent days and weeks. *Id.* at ¶¶ 5-7. During this time, Ms. Ramos averred that she had encouraged petitioner to speak with his doctors regarding his shoulder pain; however, petitioner

> insisted that it was normal to have pain following a flu vaccination. *Id.* at ¶ 7. Ms. Ramos explained that petitioner did not bring up his shoulder pain at post-vaccination medical appointments in the Fall of 2016 because the purpose of these appointments was for treatment of his lung condition, which was petitioner's "main concern." *Id.* at ¶ 9.

- On August 5, 2019, petitioner filed an affidavit from Beckie Wilbur, his sister. Pet. Ex. 15. Ms. Wilbur recalled that her mother had called her on September 25, 2016 and stated that petitioner's shoulder was hurting from a flu shot that he had received the previous day. *Id.* at ¶ 4. At a subsequent birthday party on October 8, 2016, Ms. Wilbur averred that she asked petitioner regarding his shoulder. *Id.* at ¶ 5. Ms. Wilbur stated that petitioner told her that his left shoulder had been hurting "ever since he received the flu vaccine two weeks prior." *Id.* Ms. Wilbur advised petitioner to inform his medical providers regarding his shoulder pain; however, petitioner replied that he was "more worried about his lungs." *Id.*

The above medical evidence is consistent with petitioner's affidavit testimony that his left shoulder pain began immediately following the flu vaccine on September 24, 2016. The undersigned finds the sworn testimony of petitioner's witnesses to be credible and in agreement with the contemporaneously created treatment records.

The undersigned has considered respondent's Rule 4(c) Report and his status report filed on August 20, 2019. As noted by respondent, the records in this case reflect four intervening medical appointments between September 24, 2016 and January 23, 2017 that do not specifically reference pain or left shoulder complaints. Res. Report at 8; Res. Status Report at 1-3. However, the undersigned finds that the relevant medical records, when reviewed in conjunction with petitioner's affidavits, provide a plausible and credible explanation for this omission.

Indeed, as described above, petitioner and Ms. Ramos emphasized that petitioner did not initially seek dedicated treatment for his left shoulder pain or reference this issue at medical appointments because he believed that it was normal to experience extended post-vaccination arm pain. Pet. Exs. 13 at ¶¶ 5-6; 14 at ¶ 7. Moreover, as noted in petitioner's affidavits, the four intervening medical appointments between September 24, 2016 and January 23, 2017 were primarily for treatment of medical conditions unrelated to petitioner's left shoulder.[3] Pet. Exs. 13 at ¶¶ 6-7; 14 at ¶ 9. During this period, Ms. Ramos and Ms. Wilbur explained that petitioner was more

---

[3] At an October 27, 2016 appointment, petitioner reported "shoulders and knees ache associated with fatigue." Pet. Ex. 2 at 212. As noted by respondent, the associated medical record does not reflect a specific complaint of left shoulder pain, and petitioner's shoulder was not mentioned in the physical examination section. Res. Report at 3. However, as with petitioner's other medical appointments between September 24, 2016 and January 23, 2017, the primary purpose of this visit appears to have concerned treatment for petitioner's respiratory impairments. Indeed, the visit was conducted at the "Chest Clinic" at Arrowhead Regional Medical Center and petitioner was treated by a pulmonologist. Pet. Ex. 2 at 212-13. Additionally, the majority of the medical record pertains to petitioner's respiratory complaints and prior treatment for respiratory impairments. *Id.*

5

concerned about his pulmonary condition than his shoulder pain.  Pet. Exs. 14 at ¶ 9; 15 at ¶ 5.

In the undersigned's experience, petitioner's sworn affidavits and medical records together reflect a pattern of treatment consistent with, and similar to, other SIRVA claims.  *See, e.g.*, *Dhanoa v. Sec'y of Health & Human Servs.*, 15-1011V, 2017 WL 6276468, at *5 (Fed. Cl. Spec. Mstr. Apr. 19, 2017) (noting a lack of shoulder complaints at post-vaccination medical appointments because petitioner believed her symptoms represented normal post-vaccination pain); *Williams v. Sec'y of Health & Human Servs.*, 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment because petitioner underestimated the severity of her shoulder injury); *Tenneson v. Sec'y of Health & Human Servs.*, 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied*, 142 Fed. Cl. 329 (2019) (finding that petitioner's denial of pain in the context of treatment for a urological condition did not signify a lack of shoulder pain).

As such, the undersigned finds preponderant evidence that the onset of petitioner's left shoulder pain occurred within 48 hours of his September 24, 2016 flu vaccination.

## V.      Scheduling Order

**Respondent shall file a status report, by no later than <u>Wednesday, October 30, 2019</u>, indicating whether he is interested in exploring an informal resolution of petitioner's claim.**

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u><br>
Nora Beth Dorsey<br>
Chief Special Master