# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1005V
UNPUBLISHED

| | |
|---|---|
| DAVID RAMOS,<br><br>               Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>               Respondent. | Chief Special Master Corcoran<br><br>Filed: January 4, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Bridget Candace McCullough*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Emilie Williams*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING DAMAGES[1]

On July 12, 2018, David Ramos filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq*.[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered on September 24, 2016. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons described below, **I find that Petitioner is entitled to an award of damages in the amount of $40,757.91**, **representing compensation in the amount**

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

**of $40,000.00 for actual pain and suffering and $757.91 for satisfaction of a Medicaid lien held by the State of California Department of Health Care Services.**

### I. Relevant Procedural History

This case was initiated on July 12, 2018. ECF No. 1. Following the initial status conference, Respondent was ordered to file a status report indicating his tentative position. ECF No. 8. On April 4, 2019, Respondent confirmed that he intended to defend this case. ECF No. 19.

On May 20, 2019, Respondent filed a Rule 4(c) Report opposing compensation, in part because he maintained Petitioner had not offered preponderant evidence that the onset of left shoulder pain occurred within 48 hours of vaccination. ECF No. 20. Subsequently, the parties were ordered to file additional evidence concerning the onset of Petitioner's alleged injury.[3] ECF No. 21.

A fact ruling was issued on September 30, 2019, in which it was determined that the onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination. ECF No. 26. In light of this ruling, Respondent filed an Amended Rule 4(c) Report conceding entitlement on November 6, 2019. ECF No. 27. The following day, I issued a ruling finding Petitioner entitled to compensation.[4] ECF No. 28.

Over the next six months, the parties attempted to informally resolve the issue of damages. *See generally* ECF Nos. 31, 34-37. However, the parties confirmed on May 6, 2020 that they had reached an impasse concerning the appropriate amount of compensation to be awarded for Petitioner's pain and suffering (although they agreed on the amount of a Medicaid lien to be included in the total damages sum). ECF No. 38. I subsequently set a briefing schedule to resolve this issue. ECF No. 39.

Petitioner filed his brief ("Br.") in support of damages on August 6, 2020 (ECF No. 42), and Respondent responded ("Opp.") on October 13, 2020. ECF No. 43. I thereafter proposed that the parties be given the opportunity to argue their positions at a motions hearing, at which time I would decide the disputed damages issues. ECF No. 44. The parties confirmed that they were amenable to this proposal (ECF No. 46), and the hearing

---

[3] Petitioner filed additional affidavits providing information regarding the onset of his alleged injury on August 5, 2019 (ECF No. 24), and Respondent filed a status report on August 20, 2019, supplementing the arguments raised in his Rule 4(c) Report regarding the issue of onset. ECF No. 25.

[4] This case had been reassigned to me for all further proceedings on October 1, 2019.

2

was held on December 11, 2020. This written decision memorializes my resolution of the matter.[5]

The parties are in agreement as to Petitioner's entitlement to $757.91 for satisfaction of a Medicaid lien, leaving only the determination of a pain and suffering award in dispute.

## II.     Relevant Medical History

A complete recitation of the facts can be found in the Petition, the parties' respective pre-hearing briefs, and in Respondent's Rule 4(c) Report. In brief summary, on September 24, 2016, Mr. Ramos was administered a flu vaccine intramuscularly in his left deltoid. Ex. 1 at 2. Petitioner had no previous history of shoulder impairment.

Approximately four months later, on January 23, 2017, Petitioner presented to his primary care physician with a chief complaint of left arm pain.[6] Ex. 2 at 55-56. He stated that "[s]ince September when he got a flu shot in his left deltoid," he had been unable to raise his left shoulder above 90 degrees due to pain. *Id.* at 56. Mr. Ramos rated his current pain as "3" out of "10," and noted that it had been getting progressively worse. *Id.* at 55-56. Petitioner denied any trauma or inciting event other than the flu shot. *Id.* at 56. On examination, he was unable to abduct his shoulder above 90 degrees. *Id.* at 57.

Eight days later, Mr. Ramos presented to the emergency room with complaints of left shoulder pain. *Id.* at 170. Petitioner rated his pain as "10" out of "10" with movement, and he was assessed on intake with left rotator cuff injury in September 2016 with worsening pain over four months. *Id.* He left the emergency room without being examined. *Id.*

On February 2, 2017, Petitioner underwent an occupational therapy evaluation for treatment of left rotator cuff injury and shoulder pain. *Id.* at 166-67. The date of injury was noted as September 24, 2016. *Id.* at 167. Petitioner rated his pain as "10/10" with activity but "5/10" at rest. *Id.* He presented with signs of shoulder impingement, and he was noted

---

[5] At the end of the hearing, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

[6] Prior to receiving the vaccination, Petitioner was hospitalized from September 12 through September 16, 2016 for treatment of COPD exacerbation and community-acquired pneumonia. Ex. 9 at 842-43. During the intervening period between the relevant vaccination and his January 23, 2017 medical appointment, Mr. Ramos had four follow-up appointments for treatment of COPD and cavitary lesion of the lung with associated respiratory symptoms. Ex. 2 at 43-54, 212-17.

3

to exhibit "rotator cuff dysfunction." *Id.* at 166. Mr. Ramos subsequently attended three additional therapy sessions through February 27, 2017. *Id.* at 163-64. Petitioner stated that he discontinued therapy due to pain. Exs. 2 at 61; 13 at ¶ 9.

The next month, on March 7, 2017, Petitioner had a follow-up appointment with his primary care physician. Ex. 2 at 59-63. He rated his current shoulder pain as "4" out of "10," and his physician advised him that he could use over-the-counter pain medication for symptom relief. *Id.* at 59, 62. Mr. Ramos had another follow-up appointment with his primary care physician on April 4, 2017. *Id.* at 64. At that time, he reported current pain of "0" out of "10," and he stated that his overall shoulder pain had improved. *Id.* at 64-65. He complained of left shoulder pain at subsequent medical visits on June 19 and July 5, 2017; however, the associated records are largely illegible. *Id.* at 10-11.

On September 18, 2017, Mr. Ramos underwent an initial physical therapy evaluation. Ex. 5 at 5. Petitioner now rated his pain as "2" out of "10" and confirmed that he was not taking any pain medication. *Id.* He also reported difficulty with sleeping, dressing, reaching, showering, and lifting due to shoulder pain and stiffness. *Id.* Petitioner presented with positive impingement sign as well as reduced range of motion and strength. *Id.* Mr. Ramos subsequently underwent six additional physical therapy sessions through October 16, 2017. *Id.* at 3-4. At his final appointment, Petitioner rated his current pain as "2-3" out of "10," and he was discharged to a home exercise program at his request. *Id.* at 3. There are no records of any subsequent medical treatment.

### III.  Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594,

at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And I may of course rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[7] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579, 489-90 (2013). In *Graves*, Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### IV.  Appropriate Compensation in this SIRVA Case

Mr. Ramos's awareness of his injury is not disputed, leaving only its severity and duration to be considered. In determining an appropriate pain and suffering award, I have carefully reviewed and considered the complete record in this case. I have also

---

[7] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating such cases.[8] However, my determination is ultimately based upon the specific circumstances of this case.

In his brief, Respondent argues that the records reflect Petitioner experienced a mild SIRVA, and he submits that an award of $27,000.00 is appropriate for pain and suffering. Opp. at 2, 7-8. Respondent cites to *H.S.*, a syncope case, to support his recommended proffer.[9] *Id.* at 9. I find, however, that SIRVA damages decisions provide a more appropriate framework for analyzing Petitioner's pain and suffering for the obvious reason that Petitioner's symptoms, course of treatment, and outcome are most similar to those commonly found in SIRVA cases.

Respondent also asserts that pain and suffering awards outside the Program (often arising in state court tort actions) should be considered (and in particular the fact that they tend to be lower in magnitude). *Id.* at 8-9. However, I find that awards issued *within the Program* (especially as set forth in reasoned decisions) are most persuasive. It is important to bear in mind the policy purposes of the Program—that it is a no-fault system intended to be generous in many regards, resulting in a slightly different scale (that admittedly may produce higher award values than the non-Program comparables pointed to by Respondent). Thus, other reasoned decisions in the Vaccine Program provide the most useful guidance in reaching an award amount in this case.[10]

---

[8] Statistical data for all SIRVA cases resolved in SPU from inception through January 2020 as well as a brief description of any substantive decisions can be found in the following decisions: *Vinocur v. Sec'y of Health & Hum. Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Hum. Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Hum. Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

[9] *See H.S. v. Sec'y of Health & Hum. Servs.,* No. 14-1057V, 2015 WL 6155891 (Fed. Cl. Spec. Mstr. Sept. 25, 2015) (Petitioner was a junior-high student who experienced syncope following a Tdap vaccination. Petitioner was awarded $60,000.00 in pain and suffering.)

[10] I reject Respondent's argument, however, that the amounts awarded in proffered cases are a more accurate gauge of the appropriate amount to be awarded than reasoned decisions from the court and special masters. A proffer is simply Respondent's assessment of the appropriate amount to be awarded, and a special master's approval of an award at a proffered level does not provide a reasoned instance, produced by a judicial neutral that can be looked to when evaluating the damages to be awarded—even if settled cases and proffers provide some evidence of the kinds of awards received overall in comparable cases.

Citing *Bartholomew*,[11] *Dagen*,[12] and *Knauss*,[13] Mr. Ramos requests an award of $65,000.00 in pain and suffering. Br. at 1, 7-8. His brief asserts that the severity of his injury is comparable to those of the petitioners in the above cases, although the overall duration of his pain and suffering extended for a longer period. *Id*. Petitioner further argues that his SIRVA injury and symptoms should not be discounted because he was contemporaneously receiving treatment for other serious medical conditions. *Id*. at 8.

Pursuant to my oral ruling on December 11, 2020 (which is fully adopted herein), **I find that $40,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.** My decision arises from several determinations.

First, the overall severity of the injury at issue is not high enough to warrant the magnitude of the award requested by Petitioner. Indeed, the evidence in this case establishes that he experienced a mild SIRVA which did not necessitate immediate care, surgery, or lengthy overall treatment. As detailed above, Petitioner first sought treatment for left shoulder pain on January 23, 2017—121 days following his vaccination. Mr. Ramos attempts to explain the delay by pointing out that he was during this four-month period undergoing treatment related to COPD, pneumonia, and a lung cavitary lesion. But had Petitioner's initial pain been notably severe, he would have undoubtedly sought medical care sooner (especially since he was at this time regularly obtaining medical services). Petitioner also reported pain of only "3" out of "10" at his initial medical appointment, further underscoring the mild nature of the injury. Ex. 2 at 55-56.

Although it is true Petitioner thereafter reported an increase of pain while seeking emergent care on January 31, 2017, and at occupational therapy appointments in February 2017, the overall period of symptom exacerbation appears to have been short-lived. Indeed, by April 2017, Mr. Ramos reported that his overall pain had improved, and he rated his current pain as "0" out of "10." Ex. 2 at 64-65. And at subsequent medical appointments, he continued to report generally mild pain.

I also note that Petitioner's injury lasted only approximately 13 months, and that he underwent entirely conservative treatment. Petitioner did not receive any cortisone injections and there is no imaging (e.g., MRI) to confirm post-vaccination shoulder pathology. In terms of the treatment Mr. Ramos did receive, he underwent only 11

---

[11] *Bartholomew v. Sec'y of Health & Hum. Servs.,* No. 18-1570V, 2020 WL 3639805 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $67,000.00 for pain and suffering).

[12] *Dagen v. Sec'y of Health & Hum. Servs.*, No. 18-442V, 2019 WL 7187335 (Fed. Cl. Spec. Mstr. Nov. 6. 2019) (awarding $65,000.00 for pain and suffering).

[13] *Knauss v. Sec'y of Health & Hum. Servs.,* No. 16-1372V, 2018 WL 3432906 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000.00 for pain and suffering).

occupational/physical therapy sessions, and his medical providers advised him to use over-the-counter medication for pain relief. Although Petitioner describes ongoing limitations as a result of his injury (Ex. 16), I find that he was significantly recovered at the time of his discharge from physical therapy on October 16, 2017, as reflected by his records and the lack of any subsequent treatment.

Second, the comparable cases Petitioner references – *Bartholomew*, *Dagen*, and *Knauss* – are largely distinguishable. Most notably, the petitioners in these cases sought post-vaccination treatment earlier than Petitioner, underwent MRIs confirming shoulder pathology, received cortisone injections, and had more physical therapy. *See Bartholomew*, 2020 WL 3639805, at *2-3; *Dagen,* 2019 WL 7187335, at *2-4; and *Knauss*, 2018 WL 3432906, at *2-4. The overall facts of this case in comparison suggest a less severe SIRVA.

By contrast, a different pain and suffering determination – *Rayborn v. Sec'y of Health & Hum. Servs.*, No. 18-0226V, 2020 WL 5522948 (Fed. Cl. Spec. Mstr. Aug. 14, 2020) (awarding $55,000.00 for pain and suffering) – is far more relevant to this case. The *Rayborn* petitioner delayed seeking treatment for 119 days following her vaccination, and subsequently underwent a comparable number of occupational therapy appointments (14 sessions) and had a total injury duration lasting approximately nine months. *Rayborn,* 2020 WL 5522948, at *2-3. As in this case, the *Rayborn* petitioner also generally reported mild-to-moderate pain throughout her treatment and exhibited reduced shoulder range of motion. *Id.* And at the conclusion of her treatment, the *Rayborn* petitioner experienced improved symptoms. *Id.* at *3. However, that claimant received additional treatment in comparison to Petitioner, including an MRI which confirmed shoulder pathology (mild tendinosis and thickening of the joint capsule at the axillary recess) and a cortisone injection. *Id.* at *2. The above differences warrant a lower award for Petitioner's pain and suffering in this case.

## V.     Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $40,000.00 represents a fair and appropriate amount of compensation for Mr. Ramos's actual pain and suffering.[14] I also find that Petitioner is entitled to $757.91 for satisfaction of a Medicaid lien held by the State of California Department of Health Care Services.**

---

[14] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

Based on the record as a whole and arguments of the parties, **I award the following:**

- **A lump sum payment of $757.91, representing full satisfaction of a Medicaid lien held by the State of California Department of Health Care Services, in the form of a check payable jointly to Petitioner and**

    Department of Health Care Services
    Recovery Branch - MS 4720
    P.O. Box 997421
    Sacramento, CA 95899-7421
    DHCS Account Number: C91514044D-VAC03

    Petitioner shall endorse this payment to the State of California Department of Health Care Services.

- **A lump sum payment of $40,000.00 in the form of a check payable to Petitioner.** This amount represents compensation for all remaining damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this decision.[15]

**IT IS SO ORDERED.**

                                    **s/Brian H. Corcoran**
                                    Brian H. Corcoran
                                    Chief Special Master

---

[15] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.